## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GEOFFREY W. FREEMAN, Inmate )
#N40858,                     )
                             )
              Plaintiff,     )
                             )
vs.                          )
                             )
MARY WEST, R. BLAGOJEVICH,   )
JAMES BAUERSACHS, ROGER W.   )      CIVIL NO. 05-036-JPG
WALKER, EUGENE McADORY, SGT. )
HENRY, JAMES R. CHEATHAM,    )
DOUGLAS A. CRAVENS, RANDOLPH )
COUNTY, ILLINOIS DEPARTMENT OF )
CORRECTIONS, and STEPHEN D.  )
MOTE,                        )
                             )
              Defendants.    )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

COUNT 1:    Against Defendants West, Bauersachs, McAdory, Cheatham, Walker, Henry, and Cravens for unconstitutional retaliation against Plaintiff for filing a previous lawsuit.

**COUNT 2:**    Against Defendants McAdory, Cheatham, Cravens, Walker, and the Illinois Department of Corrections ("IDOC") Legal Department for violations of due process.

**COUNT 3:**    Against Defendant Mote for enforcing an unconstitutional statute requiring Plaintiff to provide a DNA sample for collection in the state of Illinois database.

**COUNT 4:**    Against Defendants Blagojevich and Randolph County, Illinois, for forcing Plaintiff to be counted as a resident of Randolph County, violating equal protection.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal for failure to state a claim upon which relief may be granted.

## COUNT 1

In a lengthy complaint, Plaintiff states that he was unconstitutionally retaliated against by Defendants for filing a lawsuit against Mary West and James Bauersachs (*Freeman v. Walls*, Case No. 01-cv-665-CJP (S.D. Illinois, filed October 10, 2001)) complaining about his conditions of

- 2 -

confinement.  Plaintiff lists in detail the retaliatory acts.  Plaintiff states that Defendants West and Bauersachs retaliated against him.  Plaintiff states that Defendant West's husband Eddie Mayo (not a defendant) filed false disciplinary reports against him intentionally for the purpose of having Plaintiff sent to segregation.  Plaintiff contested the report and it was dismissed.  Plaintiff was later moved out of the East Cell House so that he would be separated from Officer Mayo.

After that move, Defendant West accused Plaintiff of improperly removing legal documents from the law library.  Plaintiff states that Defendant West later denied the accusation, but he also states that on January 15, 2004, Defendant West ordered Plaintiff's cell to be searched.   A number of legal and court documents were confiscated and Plaintiff was issued 35 disciplinary reports, resulting in 35 months in segregation.  Plaintiff states that Defendant West testified falsely to the adjustment committee in retaliation for the prior lawsuit.

Defendant Bauersachs, an internal affairs officer,  falsely accused Plaintiff of sending anthrax to the Federal Protective Service Office.  Defendant Bauersachs also contacted the inmates for whom Plaintiff was doing legal work, and threatened each of them with disciplinary action if they allowed Plaintiff to continue assisting them.  Officer James (not a defendant) warned Plaintiff that he should not file lawsuits against internal affairs officers.  Two days later Officer James searched Plaintiff's cell and created a false disciplinary report against Plaintiff for having contraband.  Plaintiff states that he was able to demonstrate that the report was false and it was dismissed.

Plaintiff states that later, and as a result of the dismissal, Defendants Cheatham and Henry again searched Plaintiff's cell, removed other inmates' legal papers and returned them to those inmates.  This action resulted in the 35 disciplinary reports and 35 months segregation.  Defendant

McAdory (Menard Warden) signed the forms affirming the disciplinary action on all 35 reports. Plaintiff states that all 35 reports were based upon the violation of "Rule 211" which, according to Plaintiff, did not apply to legal documents, rendering each of the reports "false." Plaintiff filed a grievance to this effect, which was reviewed by Defendant Cravens, who "intentionally refused to address the issue raise as to whether Rule 211 applied to legal documents" and instead simply reduced Plaintiff's term in segregation from 35 to 6 months, without analyzing the application of Rule 211. Defendant Walker also signed the reports. At the disciplinary hearing on the 35 reports, Lt. Andrew Wilson (not a defendant) told Plaintiff that the IDOC Legal Department had instructed him to give Plaintiff 35 months segregation time and not to call the Plaintiff's witnesses until after Plaintiff had been placed in segregation. Lt. Wilson admitted to Plaintiff that he had never seen Rule 211 applied to legal documents.

At some point, Plaintiff was transferred to Stateville Correctional Center.[1]  Upon arrival, Plaintiff was told by Counselor Georgia Glenn (not a defendant) that Plaintiff should not have been transferred to Stateville because of his many enemies there. Plaintiff was kept in orientation status for 35 days. Counselor Glenn was replaced, and on August 25, 2004, Plaintiff was placed in the general population at Stateville in a cell with a known enemy. Several inmates were later moved (leading to "chaos and anger" by those inmates) so that Plaintiff could stay in that cell. Plaintiff was taken out of the general population and put into protective custody until October 27, 2004, when he was transferred back to Menard.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005

---

[1]Plaintiff provides no date for the transfer to Stateville.

(7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* Based on these legal standards and Plaintiff's allegations, Count 1 cannot be dismissed at this point in the litigation.

### COUNT 2

Plaintiff states that Defendant McAdory "intentionally and knowingly" adopted a false disciplinary report. Defendant Cheatham "intentionally and knowingly" signed 35 false disciplinary reports. Defendant Cravens "intentionally and knowingly" refused to address the merits of one of Plaintiff's grievances, specifically a grievance requesting a clarification of "Rule 211" that had allegedly been used to punish Plaintiff. Plaintiff states that Defendant Cravens never addressed Rule 211, but instead merely reduced Plaintiff's punishment from 35 months segregation to six months segregation. Plaintiff states that Defendant Walker intentionally and knowingly approved a false disciplinary report. Finally, Plaintiff states that the IDOC legal department directed that Plaintiff be sanctioned for violation of a rule that did not apply to Plaintiff.

The Court believes that Plaintiff intends for these claims to stand on their own merits as alleged due process violations.[2] To the extent that Plaintiff is alleging a separate claims for violations of due process, the claims fail. In order to state a due process claim, a plaintiff must show that he has been denied a liberty interest. "[A] state's inmate grievance procedures do not give rise

---

[2]The actions of Defendants McAdory, Cheatham, Cravens, and Walker are listed separately as acts of retaliation under Count 1.

to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). As stated, Plaintiff's allegations to not indicate a violation of his constitutional rights. Accordingly, Count 2 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### Count 3

Plaintiff states that in February 2004, he was required to submit a DNA sample to be placed in the Illinois State Police DNA "bank." Plaintiff gave the sample, on threat of disciplinary action by Defendant Mote. He now argues that the Illinois statute requiring that incarcerated individuals provide such samples violates his constitutional rights in that 1) the statute cannot apply retroactively, and 2) the requirement is a "suspicionless" search that violates his Fourth Amendment right against unreasonable search and seizure.

Both of Plaintiff's arguments have been foreclosed by the Seventh Circuit. *See Gilbert v. Peters*, 55 F.3d 237, 238-39 (7th Cir. 1995) (holding that requiring prisoners convicted prior to enactment of statute to comply with its terms does not violate Ex Post Facto clause); *Green v. Berge*, 354 F.3d 675, 677-78 (7th Cir. 2004) (holding Wisconsin statute requiring all incarcerated felons to provide DNA samples for state data bank does not violate Fourth Amendment under "special needs" doctrine). Accordingly, this claim is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 4

Plaintiff states that he is a resident of Cook County, Illinois, even though he is currently

incarcerated in Menard Correctional Center in Randolph County, Illinois.  In 1990 and 2000, Plaintiff was counted in the United States Census as a resident of Randolph County.  Plaintiff states that he is in Randolph County by force and should have been counted as a resident of Cook County. Plaintiff argues that it is a violation of his rights under the Equal Protection clause of the Fourteenth Amendment to count him as resident of Randolph County because it influences congressional redistricting in the state of Illinois.  More specifically, the weight of each vote in rural Randolph County is increased by his being counted as a resident there, while the weight of each vote in urban Cook County is decreased.  Plaintiff believes many urban black and hispanic inmates are counted in rural areas throughout Illinois by virtue of the fact that most IDOC facilities are in rural areas. As a result, "rural whites are able to and have been speaking for the interest of this incarcerated urban prisoner, in ways which are counter to this prisoner's interest."  Plaintiff claims that this amounts to unlawful discrimination against "Urban Chicago and Cook County" and "fundamentally shifts the balance of power politically through the redistricting process."  Federal money and federal political power then shifted from "low-income, inner-city neighborhoods of color . . . to white, rural down-state areas."  Plaintiff likens this treatment to the now-inapplicable slavery clause of the constitution.  Plaintiff further argues that the system of counting urban prisoners in the rural areas where they are housed is unconstitutional on its face because it results in loss of federal funds, programs, and legislative seats for urban areas.  Plaintiff claims that Defendants Blagojevich and Randolph County are responsible for these violations.

There are a number of procedural problems with this challenge, the first of which necessitates its dismissal.  Federal courts are required, as a threshold matter, to determine whether a plaintiff has standing to bring the challenge at issue.  Article III of the Constitution restricts federal

- 7 -

courts from adjudicating matters that do not present actual cases or controversies. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). Central to the case or controversy requirement is the doctrine of standing which requires that a plaintiff show the following. First, a plaintiff must demonstrate a concrete and particularized "injury-in-fact" that is actual or imminent, not merely conjectural or hypothetical. Second, a plaintiff must show a causal connection between the injury and the conduct complained of. Third, a plaintiff must show a likelihood that the injury will be redressed by a decision in his or her favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

Plaintiff's injury here, that when he returns to Cook County federal money, programs, and legislative representation will be lost to him, is far too speculative an injury to confer standing. First, because Plaintiff does not currently reside in Cook County, nor did he during either the 1990 or 2000 census, he cannot show that he has "personally suffered" any injury as a result of the alleged misconduct. *See Sierra Club v. Morton*, 405 U.S. 727 (1972). Second, Plaintiff cannot show a likelihood of future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Plaintiff is serving a life sentence in the Illinois Department of Corrections. *See People v. Freeman*, 581 N.E.2d 293 (Ill. App. Ct. 1991), *appeal denied*, 587 N.E.2d 1019 (Ill.), *cert. denied*, *Illinois v. Freeman*, 505 U.S. 1213 (1992). His return to Cook County at all is unlikely. Thus, Plaintiff has not yet suffered any injury as a result of Defendants' alleged misconduct, nor is he likely to suffer any future injury. Therefore, Plaintiff does not have standing to bring this challenge under *Lujan*. Accordingly, Count 4 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### DISPOSITION

Plaintiff may proceed on Count 1 against Defendants West, Bauersachs, McAdory, Cheatham, Walker, Henry, and Cravens. Counts 2, 3, and 4 are **DISMISSED** from the action with

prejudice as are Defendants IDOC Legal Department, Mote, Blagojevich, and Randolph County.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants West, Bauersachs, McAdory, Cheatham, Walker, Henry, and Cravens***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants West, Bauersachs, McAdory, Cheatham, Walker, Henry, and Cravens*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of IDOC who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from IDOC pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of

service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for

- 10 -

disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Dated:  October 4, 2006**

  **s/ J. Phil Gilbert**
  **U. S. District Judge**